AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
### for the
### Middle District of Florida

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | |
| | ) | Case No. |
| JENNIFER SUSAN CRUZ | ) | 3:26-mj- 1008-MCR |
| | ) | |
| | ) | |
| | ) | |

*Defendant(s)*

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _____ January 13, 2026 _____ in the county of _____ Duval _____ in the
_____ Middle _____ District of _____ Florida _____ , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 111(a) | Forcibly assaulting, resisting, opposing, impeding, intimidating, and interfering with a federal officer who was engaged in the performance of official duties |

This criminal complaint is based on these facts:

See attached affidavit

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Scott R. Kraich, Special Agent, HSI
*Printed name and title*

Sworn to before me over the telephone and signed by me pursuant to Fed. R. Crim. P. 4.1 and 4(d).

Date: _____ 01/16/2026 _____

_____
*Judge's signature*

City and state: _____ Jacksonville, Florida _____    ~~Monte C. Richardson,~~ U.S. Magistrate Judge
*Printed name and title*

PATRICIA D. BARKSDALE

## CRIMINAL COMPLAINT AFFIDAVIT

I, Scott R. Kraich, being a duly sworn and appointed Special Agent for the United States Department of Homeland Security, U.S. Immigration and Customs Enforcement, Homeland Security Investigations, hereby declare as follows:

1.      I am a Special Agent for the United States Department of Homeland Security, U.S. Immigration and Customs Enforcement ("ICE"), Homeland Security Investigations ("HSI"), and have been since November 2008. Previously, I was employed as a Correctional Probation Senior Officer and Correctional Probation Officer for the Florida Department of Corrections for approximately nine years and six months. I received a Bachelor of Science in Criminology from Florida State University in December 1993. I have training and experience in the preparation, presentation, and service of criminal complaints and arrest warrants to include complaints and arrest warrants related to violations of federal laws.

2.      The information set forth in this affidavit is based on my personal knowledge, as well as information obtained from other sources, either involved in the investigation or who have personal knowledge of the facts herein. Because this affidavit is submitted for the limited purpose of establishing probable cause, I have not included every detail of every aspect of the investigation for this affidavit. Rather, it only includes the information necessary to support a finding of probable cause.

3.     For the reasons discussed below, I respectfully submit that there is probable cause to believe that on January 13, 2026, in Duval County, in the Middle District of Florida, JENNIFER SUSAN CRUZ did intentionally and forcibly assault, resist, oppose, impede, intimidate, and interfere with an officer and employee of the United States and of an agency in a branch of the United States Government, that is, the Department of Homeland Security, while such officer and employee was engaged in and on account of the performance of official duties, and a person assisting such an officer and employee in the performance of such duties and on account of that assistance, and such acts involved physical contact with the victim of that assault, in violation of 18 U.S.C. § 111(a)(1).

4.     The facts set forth below come from my review of reports of officers involved in the incident, my speaking to Florida Highway Patrol ("FHP") Troopers Kenneth McGeehan and Robert Valenzuela, and my review of audio/video recordings made by cameras in FHP vehicles that were at the scene of the described events.

5.     On January 13, 2026, Trooper McGeehan and other FHP Troopers were assisting ICE with an immigration enforcement operation.  During this operation, he was traveling westbound on U.S. Highway 90 near Professional Drive in Jacksonville, Florida, when he observed a white female, later identified as JENNIFER SUSAN CRUZ, driving a white Dodge pickup truck eastbound on U.S. Highway 90.  Shortly thereafter, while traveling westbound on U.S. Highway 90, Trooper McGeehan observed a blue pickup truck with a trailer that appeared to have

2

unlawful window tint and that had its license tag in a vertical position on the trailer. Before he could initiate a traffic stop of the blue truck, Trooper McGeehan observed that CRUZ had made a U-turn in the white Dodge truck and had placed her vehicle directly behind the blue truck. Trooper McGeehan maneuvered his fully marked FHP patrol vehicle behind the blue truck and in front of the white Dodge truck, activated his vehicle's emergency lights, and conducted a traffic stop of the blue pickup truck. As he was stopping the blue truck, Trooper McGeehan observed CRUZ driving the white Dodge truck directly behind his patrol vehicle while holding her cell phone in front of her face, appearing to be recording the traffic stop.

6.      Trooper McGeehan stopped the blue pickup truck in a parking lot at 10769 Beach Boulevard in Jacksonville, Florida. After he stopped the truck, CRUZ parked the white Dodge truck approximately 15 yards away, directly facing his patrol vehicle. CRUZ began yelling at Trooper McGeehan and attempting to interfere with his law enforcement activity. During the stop, Trooper McGeehan and ICE officers determined that the two occupants of the truck were aliens who were unlawfully present in the United States.

7.      On January 13, 2026, Trooper Valenzuela arrived at the scene of Trooper McGeehan's traffic stop, approached the white Dodge truck, identified himself to CRUZ, and advised her that she was being addressed due to her use of a cellular telephone while driving. Trooper Valenzuela requested CRUZ's driver's license, vehicle registration, and proof of insurance. CRUZ stated that she did not

have her physical driver's license but that she had a photograph of it on her cellular telephone.

8.    During this interaction, CRUZ was argumentative, standoffish, and continued recording. Trooper Valenzuela advised CRUZ that he had no issue with her recording and that his concern was solely her unsafe and unlawful use of a cell phone while operating a motor vehicle. During the encounter, CRUZ made unsolicited and inflammatory statements, asking whether he supported the "Nazis," which she clarified as referring to ICE, and asking him not to shoot her in the face. Trooper Valenzuela advised CRUZ that ICE officers were present in an official capacity and that he was not there to discuss personal or political beliefs, but solely to address her traffic violation.

9.    CRUZ then displayed a photograph of her Florida driver's license and Trooper Valenzuela advised CRUZ to remain in her vehicle while he conducted further investigation. A records check revealed that CRUZ's license was suspended as of June 17, 2025, for failure to maintain financial responsibility. Because CRUZ's license was suspended, Trooper Valenzuela requested a tow truck to impound the white Dodge truck, as CRUZ was not legally authorized to operate the vehicle.

10.    While Trooper Valenzuela was waiting for the tow truck, CRUZ drove away from the scene without permission, despite knowing that the traffic stop was ongoing. Multiple Troopers, including Trooper Valenzuela, immediately activated their emergency lights and sirens and maneuvered their patrol vehicles to safely box

4

in CRUZ's vehicle, and they stopped it approximately 200 feet away from the traffic stop.

11.    After the vehicle was stopped, Trooper Valenzuela advised CRUZ that the traffic stop had not been concluded and that the vehicle was going to be towed because her license was suspended. Trooper Valenzuela directed CRUZ to exit the vehicle and surrender the keys so that the vehicle could be released to the tow company. CRUZ exited the vehicle but immediately became verbally hostile stating, "fuck every one of you," and repeatedly refused to surrender the keys despite multiple directives to do so.

12.    Trooper Valenzuela and another Trooper, who will be referred to as Trooper 3, attempted to verbally de-escalate the situation and gain voluntary compliance. Despite these efforts, CRUZ stated she was "ready to go" and, when asked, stated that she meant by that statement that she was ready to fight. When Trooper 3 attempted to retrieve the keys from CRUZ, CRUZ struck Trooper 3 in the face with a closed fist. Multiple officers then converged on CRUZ to arrest her for the assault.

13.    CRUZ resisted arrest, including by attempting to strike and kick the officers. As CRUZ continued to struggle with them, officers took her to an FHP patrol vehicle. While they were taking her to the vehicle, she attempted to kick Trooper 3 as she walked by. As officers were attempting to place CRUZ inside the vehicle, CRUZ kicked at an ICE officer, a Customs and Border Protection ("CPB") agent, and Trooper Valenzuela, and she successfully struck the CBP agent and the

ICE officer, whose left hand was injured. During the attempt to place CRUZ in the patrol vehicle, Trooper Valenzuela deployed his taser but deployment of the taser did not subdue CRUZ. Officers were eventually able to secure CRUZ in the patrol vehicle, but she continued kicking at the vehicle's windows, roof, and in-car camera.

14.    CRUZ was transported by FHP Trooper Echeverriavidal to the ICE Mobile Command Post in Jacksonville, Florida. While in the back seat of the vehicle, CRUZ stated that her actions were not worth the incident escalating "over a set of car keys." After arriving at the ICE Mobile Command Post, CRUZ was transferred to a command bus. While on the bus, CRUZ called her daughter and told her in Spanish that she messed up "really ugly" and that what she did was not okay. While on the bus, CRUZ said that she wanted to apologize to Trooper 3. She was then escorted out of the bus and she told Trooper 3 that she was sorry for hurting her, that she was not sure why she acted that way, and that she knew that she (Trooper 3) had a job to do. CRUZ was subsequently transported to the Duval County jail for booking and processing.

15.    Trooper 3 sustained injuries to her face, ear, nose, and left hand as a

result of CRUZ's assault. She received medical treatment at the scene and later went

to a hospital for further treatment.

Scott R. Kraich, Special Agent
Homeland Security Investigations
Jacksonville, Florida

Affidavit submitted by email and
attested to me as true and accurate
by telephone consistent with
Fed. R. Crim. P. 4.1 and 4(d) before
me this 6th day of January 2026.

MONTE C. RICHARDSON PATRICIA D BARKSDALE
United States Magistrate Judge

7